**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**CHARLES B. BARNIV, et al.,**

  **Plaintiffs,**

**v.**            **Case No. 3:12cv394/MCR/EMT**

**BANKTRUST, an Alabama
Corporation,**

  **Defendant.**
_____/

## <u>ORDER</u>

  The court previously granted summary judgment in favor of the defendant on Count II of the First Amended Complaint, and denied (without prejudice to refiling) the defendant's motion for summary judgment on Count I, finding that the allegations were sufficient to state a claim but declining to rule on summary judgment until the parties had an opportunity to fully develop the record. (Doc. 34). The defendant now moves for reconsideration of the summary judgment order as to Count I on grounds that the court failed to rule on the legal issue of probable cause, arguing there are no material disputes of fact on the record to preclude entry of summary judgment and that it is entitled to judgment as a matter of law (doc. 37). The plaintiffs oppose the motion (doc. 42).

  No final judgment has been entered in this case, and therefore, the court's summary judgment order is subject to revision under the court's "inherent power to reconsider and revise its orders in the interests of justice." *Delta Health Group, Inc. v. U.S. Dep't of Health and Human Servs.*, 459 F. Supp. 2d 1207, 1227-28 (N.D. Fla. 2006). The Federal Rules of Civil procedure recognize the district court's broad discretion to reconsider interlocutory orders, noting that an order adjudicating fewer than all claims does not end the action as to any of the claims "and may be revised at any time before the entry of a judgment

adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Bryant v. Jones*, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010).

Under Florida law, the elements of a claim for wrongful garnishment are the same as for a claim of malicious prosecution. *See Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 844-45 (Fla. 4th DCA 2001). The elements are: (1) the commencement or continuation of a proceeding; (2) legal causation by defendant against the plaintiff, who was the defendant in the original proceeding; (3) bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for the proceeding; (5) the presence of malice;[1] and (6) damages. *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla. 1974); *see also Burshan*, 805 So. 2d at 845. "Probable cause in this sense exists when the facts and circumstances would lead a person of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that one of the grounds for suing out the writ existed. . . . Mere suspicion, however honestly and intensely entertained, unsupported by facts known to the plaintiff, does not constitute probable cause." 13 Fla. Jr. 2d Creditors' Rights § 192 (database updated Nov. 2012) (citing *Burshan*, 805 So. 2d 835, and *L. Bucki & Son Lumber Co. v. At. Lumber Co.*, 121 F. 233 (5th Cir. 1903)[2]). Probable cause is a legal question if the facts are not in dispute. *See Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002); *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012); *see also Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 602 (Fla. 2d DCA 2011) ("The legal effect of the facts, when found or admitted to be true, is for the court to decide as a question of law.") (internal marks omitted).

In its prior summary judgment order (doc. 34), the court concluded that the plaintiffs had stated a claim and declined to analyze the probable cause issue on grounds that it

---

[1] Legal malice "'may be inferred entirely from a lack of probable cause.'" *Burshan*, 805 So. 2d at 845 (quoting *Adams*, 290 So. 2d at 51). "Legal malice may also be inferred from 'gross negligence, or great indifference to persons, property, or the rights of others.'" *Id.* at 845 (quoting *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1357 (Fla.1994)).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

would be better to do so on the basis of a fully developed record.[3]  On reconsideration, however, it is clear, even at this early stage of the proceedings, that the plaintiffs have not identified any material disputes of fact bearing on probable cause that exist or require further discovery, and thus, summary judgment should be entered on Count I.

The state court proceedings show that Judge Green issued a "Final Summary Judgment as to Counts Two and Three" on February 15, 2011, against the Barnivs and Witkind for the total sum of $1,979,163.86, stating, "for all of which let execution issue" and also stating that the court reserved jurisdiction to enter such further orders and judgment as may be necessary  (doc. 8-6).  The Barnivs and Witkind moved to set aside the order, and Judge Green denied the motion in April 2011.  BankTrust recorded the judgment on June 24, 2011.  The appeal of the order to the First District Court of Appeal was dismissed on August 4, 2011, *see* 66 So. 3d 409, with the court merely citing *Conti v. B & E Holdings, LLC*, 61 So. 3d 1272 (Fla. 1st DCA 2011).[4]  Meanwhile, in May 2011, the Barnivs and Witkind had filed a motion seeking to disqualify Judge Green.  Judge Green noted that he lacked jurisdiction because of the appeal, and counsel for the Barnivs and Witkind then filed a mandamus action against him in July for his failure to rule on the motion.  On August 5, 2011, the day after the appeal was dismissed, Judge Green entered an order disqualifying himself from the case, and the clerk reassigned the case to Judge Wells.

On September 20, 2011, Judge Wells held a hearing on the Barniv and Witkind's request for rehearing or to set aside the summary judgment order in light of Judge Green's recusal, which Judge Wells denied.  Judge Wells also commented that a stipulated amendment contemplated by the parties, in which the Barnivs and Witkind would add counterclaims (but not affirmative defenses) would be permitted, but a proposed

---

[3]  The court initially deferred entering a scheduling order with a discovery deadline because of the defendant's early filed summary judgment motion challenging the court's jurisdiction.

[4]  In *Conti*, the court dismissed an appeal as premature where a money judgment for amounts due on a promissory note appeared to be executable but "the trial court ha[d] not resolved the mortgage foreclosure action, which was brought against the appellants and other defendants in a separate count of the complaint" and had expressly preserved all other rights under the note, loan documents, and mortgage. Thus, the appellate court found the order was not final and appealable.  *See* 61 So. 3d at 1272-73.

amendment was not before the court at that time.

On November 29, 2011, BankTrust filed a motion for writs of garnishment (doc. 10-1), attaching Judge Green's February 15, 2011, summary judgment order and representing a belief that the Barnivs and Witkind did not have in their possessions visible property on which a levy could be made to satisfy the judgment. Judge Wells signed the orders directing issuance of the writs of garnishment on December 2, 2011. On December 6, 2011, the Barnivs and Witkind filed an emergency motion to quash the writs, asserting that the summary judgment order was not final and informing the trial court that the First District Court of Appeal had dismissed the appeal of the order for this reason. Judge Wells held oral argument on the motion on December 20, 2011. The parties' arguments centered upon whether the order, though found to be nonappealable, was nonetheless executable because it was final as to the indebtedness of the Barnivs and Witkind on the notes and guarantees. They were not named on the remaining count of foreclosure, and the trial court had denied the motion for rehearing in September 2011. BankTrust argued that it had fulfilled the procedural prerequisites pursuant to Fla. R. Civ. P. 1.550(a), which provides that no execution shall issue "until the judgment on which it is based has been recorded nor within the time for serving a motion for new trial or rehearing," or until after a timely rehearing motion has been determined.[5] The Barnivs and Witkind, on the other hand, argued it was axiomatic that a nonfinal order was not an executable judgment and requested sanctions against BankTrust for acting in bad faith, to which BankTrust responded that it would not have objected to a motion to stay if they had filed one and posted a bond to protect the bank. After hearing and considering the parties' arguments, Judge Wells denied the emergency motion to quash and did not impose sanctions but stated that the Barnivs and Witkind could move to stay the garnishment. Their counsel stated on the record that they would not do so. Subsequently, on December 27, 2011, Judge Wells entered a written order granting a motion to file counterclaims within 20 days

---

[5] The rule also provides that execution may issue on special order of the court at any time after judgment and that the court "may stay such execution or other process and suspend proceedings thereon for good cause on motion and notice to all adverse parties." Fla. R. Civ. P. 1.550(a) & (b).

of the order and granting BankTrust 10 days to respond to them.

On April 27, 2012, on appeal of the order denying the emergency motion to quash, the First District Court of Appeal reversed "because appellants' counterclaims against appellee remain pending." *Barniv v. BankTrust*, 85 So. 3d 581, 582 (Fla. 1st DCA 2012). On July 16, 2012, Judge Wells quashed the writs of garnishment consistent with the appellate court order.

Now, having fully reviewed the record in light of the defendant's arguments, the court finds that the plaintiffs have not identified any material issue of fact in dispute or any issue of fact needing further discovery on probable cause and that on this record, they cannot demonstrate an absence of probable cause, which is an essential element of their wrongful garnishment claim. The plaintiffs argue that there was no final executable judgment and that BankTrust cannot rely on the denial of the motion to quash as establishing probable cause because the order was subsequently reversed. While it is true, as the plaintiffs assert, that at the time BankTrust filed the motion for writs of garnishment on November 29, 2011, the First District Court of Appeal had previously dismissed an appeal of the summary judgment order and a foreclosure count remained pending rendering the appeal premature, the appellate court did not discuss the issue of execution in dismissing the appeal.[6] Also, although the foreclosure count was related to the note and guarantees that were the basis for the money judgment, the Barnivs and Witkind were not named in the foreclosure count and had no pending claims against BankTrust at that time. Additionally, the face of Judge Green's February 2011 summary judgment order stated it was final and included a judgment for a sum certain "for which let execution issue," and BankTrust recorded the judgment in June 2011. BankTrust did not seek writs of garnishment until over two months after the dismissed appeal and after the trial court had denied two separate motions for rehearing of the summary judgment order, and there were no pending claims against Barniv or Witkind or counterclaims at the time

---

[6] In neither the Barniv's appeal nor the *Conti* case did the First District Court of Appeal discuss the issue of execution, aside from noting in *Conti* that the money judgment there "appear[ed]" to be executable. 61 So. 3d at 1272.

BankTrust sought writs of garnishment on November 29, 2011, or at the time Judge Wells denied the motion to quash after oral argument on December 20, 2011. Thus, although it was clear that the summary judgment order was not appealable after the First District Court of Appeal's decision, there was some reasonable basis for BankTrust to conclude that the money judgment against the Barnivs and Witkind was nonetheless final and executable as to the Barnivs and Witkind.

Additionally, Judge Wells denied the motion to quash the writs of garnishment after hearing oral argument from all parties. BankTrust argues that it is appropriate for this court to rely on malicious prosecution cases, which state that a judgment "is conclusive evidence of probable cause unless obtained by fraud, perjury, or other corrupt means," and even "a subsequent reversal of the judgment of conviction does not destroy the validity and effect of the determination of the question of probable cause unless it be reversed for fraud, perjury, or other corrupt means." *Goldstein v. Sabella*, 88 So. 2d 910, 912 (Fla. 1956). Applying that principle here, BankTrust asserts that the order denying the motion to quash established the existence of probable cause, despite the subsequent reversal of the order. The plaintiffs argue that this principle does not apply in a wrongful garnishment proceeding and BankTrust should not be allowed to rely on a "void" order denying their motion to quash to establish probable cause. The court agrees with BankTrust. No Florida case supports the plaintiffs' contention that *Goldstein* should not apply here. Because the elements of wrongful garnishment under Florida law are the same as those for malicious prosecution, it stands to reason that the same probable cause analysis applies similarly in garnishment proceedings, despite a scarcity of cases on this precise issue.

The court agrees with BankTrust that the order denying the motion to quash is evidence of probable cause, and the plaintiffs have not shown any evidence of fraud or corruption in the process of obtaining that order to counter it. Although the plaintiffs allege that BankTrust misled the trial court by representing the order as a "final" judgment, the court's review of the record plainly shows that the trial judge was fully informed of the true facts and not misled as to the state of the record; no unfairness in the proceeding is shown. *See generally, Crescent City Live-Stock Landing & Slaughter-House Co. v. Butcher's*

*Union Slaughter-House*, 120 U.S. 141, 149-151 (1887) (stating a judgment or decree, even if reversed, creates a "legal deduction of probable cause" which can only be counteracted if the malicious prosecution plaintiff shows the judgment was unfairly obtained as a result of malice, fraud or oppression that deprived the plaintiff of the means to have defeated the suit). Although the plaintiffs did obtain a favorable ruling on appeal, that ruling does not destroy the initial determination of probable cause. Moreover, the First District Court of Appeal referenced the subsequently filed counterclaims in the reversal, not any fraud or corruption in the process. *See Goldstein*, 88 So. 2d at 912. The plaintiffs assert there may be discoverable evidence to prove BankTrust sought garnishment prematurely in an attempt to convince bank regulators that it was a final judgment and to force the plaintiffs to settle, but such evidence would not show that the court was misled in ruling on the motion to quash. The order denying the motion to quash, as well as the facts existing at the time the motion for writs of garnishment was filed, support a conclusion that BankTrust exercised a reasonable belief that grounds for the writ existed, establishing probable cause, which has not been rebutted by proof of corrupt means in the proceeding. Absent a lack of probable cause or conduct demonstrating gross negligence or great in difference to persons or property rights, there is also no basis for inferring the element of legal malice.[7] *See Burshan*, 805 So. 2d at 845 (stating legal malice may be inferred from a lack of probable cause, gross negligence or great indifference). Therefore, the court concludes that summary judgment should be granted on Count I of the First Amended Complaint.[8]

Accordingly, the motion for reconsideration (doc. 37) is GRANTED, and summary judgment is GRANTED on Count I of the First Amended Complaint. No other claims remain, and therefore, all pending motions are DENIED as MOOT. The Clerk is directed

---

[7] The plaintiffs incorrectly stated that this court previously determined malice and want of probable cause are not essential elements of an action for wrongful garnishment. Instead, the court recited the correct elements of wrongful garnishment but noted that proof of actual malice was only necessary to punitive damages and that legal malice may be inferred from a lack of probable cause or from gross negligence indicating a wanton disregard for the rights of others. (*See* Doc. 34, at 6-8 & n.6).

[8] The court notes that in light of the plaintiffs' representation to this court that the suit on the foreclosure count and their counterclaims remains ongoing in state court, they have a full opportunity to seek sanctions within that case for any alleged wrongful conduct by BankTrust or its attorneys.

to enter summary final judgment in favor of the defendant and against the plaintiffs and close the file.  Costs to be taxed against the plaintiffs.

**DONE and ORDERED** this 28th day of December, 2012.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**